IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CHARLES CLARY, | CV 19-00066-H-BMM–JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| REGINALD MICHAEL, LYNN GUYER, GAYLE BUTLER, SCOTT GRINER, DENNIS KEELE, TERESA HOSSACK, CHRIS ZACHER, BRUNO KRAUS, and BILL WEDDINGTON, | |
| Defendants. | |

All of the defendants in this action have filed motions for summary judgment. Defendants Reginald Michael, Lynn Guyer, Gayle Butler, Scott Griner, Dennis Keele, Teresa Hossack, Chris Zacher, and Bill Weddington ("Group Defendants") filed one motion. (Doc. 36.) Defendant Bruno Kraus ("Kraus") has filed his own. (Doc. 40.) Plaintiff Charles Clary ("Clary") has filed several documents in response, though he does not appear to have filed a response brief labelled as such. Because of the Court's obligation to construe the filings of a pro se litigant liberally, the Court will consider Plaintiff's Document 46 ("Motion to Strike, Defendants motion for summary judgement") as his response brief. Clary

1

did file a "Memorandum of Establish[ed] Material Issued Facts" (Doc. 49) and a

"statement of undisputed facts" (Doc. 54.), which the Court will construe together

as his disputed facts for the purposes of summary judgment. Because the Court

concludes that Clary did not properly exhaust his administrative remedies,

Defendants' motions for summary judgment should be granted on those grounds,

without consideration of the other issues raised by Defendants.[1] *Albino v. Baca*,

747 F.3d 1162, 1170 (9th Cir. 2014).

I.      Factual and procedural background

        At the time of the events in the Complaint, Plaintiff Clary worked in the

high side laundry facility at Montana State Prison ("MSP"). On Oct. 31, 2018,

Clary reported an incident that he observed at the laundry between Defendant

Bruno Kraus, a correctional officer, and another inmate. (Doc. 54 at 1.) Clary

alleges that Kraus told this other inmate "If I tell you to show me your nuts, you

will show me your nuts." (Doc. 1 at 5.) Clary viewed this as sexual harassment and

reported the harassment to a civilian worker in the laundry, Defendant Chris

---

[1] Clary's August 25, 2020 document in response to summary judgment says that MSP is denying him access to four of his witnesses, and he wants the MSP legal department to give him a recording device so he can record his witnesses' statements and then send the recordings to his federal defender for transcription. (Doc. 46 at 3.) Discovery was to be completed by July 15, 2020, and motions were due by August 14, 2020. (Doc. 27 at 2.) This request is untimely and will be denied. In any event, based on this Court's other analysis, the request is moot.

Zacher, who apparently replied that he did not believe that sexual harassment had occurred. As a result, Clary alleges, for some reason, Zacher embarked on an effort to sow discord between Clary and Kraus. (Doc. 1 at 7.)

Later that same day, Kraus ordered Clary to enter a bathroom for a visual strip search out of view of the others in the laundry. Clary claims that Kraus was verbally abusive in this search, including making homophobic comments. At this point, Kraus noticed that Clary had orthopedic shoes. (Doc. 54 at 2.)

On November 1, 2018, Kraus went to Clary's cell and confiscated the shoes as contraband, including their special insoles.

On November 2, 2018, Clary called the Prison Rape Elimination Act ("PREA") hotline about this incident and filed an Informal Resolution. (Doc. 54 at 2; Doc. 46-1 at 17 - 18.) Clary contends that the PREA Compliance officer, Defendant Bill Weddington, waited nine days to place a separation needs order to keep Kraus away from Clary, and to notify staff about the order.

Clary then asserts that on December 12, 2018, Kraus sexually assaulted him, "perpetuating" an injury in his testicle.[2] (Doc. 49 at 1.) Clary alleges that Kraus conducted a pat search and "backhanded Plaintiff's testicles." (Doc. 54 at 3.)

---

[2] Plaintiff repeatedly refers to this as a "veincose tear." His choice of the verb "perpetuating" also puts into question whether this was a pre-existing condition.

The defendants are in different positions regarding Clary's claims. Only Kraus is specifically accused of a sexual assault or harassment, so he has filed his own motion. However, all Defendants have asserted similar arguments--they are entitled to summary judgment on the grounds of lack of exhaustion of administrative remedies, no private right of action under the Prison Rape Elimination Act ("PREA"), qualified immunity, no Eighth or Fourteenth Amendment violations, and, for the supervisors, no supervisory liability. (Docs. 37 and 41, generally.)

II. Standard for summary judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a

genuine issue for trial." *Id.* at 324. Once the defendant submits evidence that supports his motion, the plaintiff cannot rest on the pleadings but must come forward with specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). The Court views the facts and inferences from them in the light most favorable to Clary as the non-moving party, especially since Clary's responses somewhat lack clarity. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

III.    Analysis

A. Exhaustion of administrative remedies

Group Defendants and Kraus both assert first that Clary failed to exhaust his administrative remedies and therefore is not entitled to bring this suit. (Doc. 37 at 9 - 13; Doc. 41 at 9 – 12.) This issue is dispositive.

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). As such, the Court will analyze the failure to exhaust defense first.

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

6

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct., at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be simple or capable of only one interpretation. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process

7

through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. MSP Operational Procedure ("OP") 3.3.3(III)(A)(2) explicitly governs the grievance process and states that "…disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process, are not grievable under the inmate grievance program." In contrast, grievable issues include "All other issues, including …staff conduct, written policy or procedures…[, and] conditions of confinement" among other things. (MSP OP 3.3.3(III)(B)(1) operative at the time of Clary's Complaint, found at Doc. 38-25 at 2.) With the exception of emergency grievances, the Inmate Grievance Program

involves four steps: (1) informal resolution, (2) formal grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC. MSP OP 3.3.3(III)(E), (III)(F), (III)(I), (III)(K). There are timelines for properly submitting grievances. MSP OP 3.3.3(III)(D). "If an inmate fails to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." MSP OP 3.3.3(III)(D)(5).

B. Clary's efforts to exhaust available administrative remedies

In his Complaint, Clary asserted that the prison where his claims arose did not have a grievance procedure (Doc 1 at 13); he failed to respond to the question of whether he filed a grievance (*id*.); and he further stated that "PREA complaints are non-grievable." (*Id*.) Defendants pled lack of exhaustion as an affirmative defense in their answer. (Doc. 10 at 12.) Defendants' Statement of Undisputed Facts outlines the grievance procedure at MSP and details all of the grievances Clary filed in relation to the matters in this suit, relying in good measure on the affidavit of Billie Reich, who at the time of these events was MSP's program manager over the grievance and disciplinary departments, and on Clary's grievance file. (Docs. 38 at 21 – 30 and, generally, 38-8 and 38-27.) The entire sequence will not be repeated here, but the relevant aspects are as follows.

As background, Clary had filed, at the time Defendants filed their briefs, 78 grievances in his time at MSP. (Doc. 38 at 21.) Of those, 61 were unrelated to this case. Clary exhausted all four administrative steps on seven grievances, taking them to DOC appeals. (*Id*. at 21 – 23.) Clary's MSP grievance file is submitted to the record as Defendants' Exhibit P and runs to 107 pages. Therefore, the question here is not that Clary did not know how to exhaust his administrative remedies when he chose to. It is whether he did so in this matter.

Clary filed an informal grievance on November 2, 2018, following the incident with Kraus in the bathroom and the loss of his orthopedic shoes. (Doc. 38 at 22.) This form names Kraus and Zacher. The grievance requests a PREA investigation and theft charges for the loss of his shoes. Doc. 38-27 at 89. The request for an investigation was granted. An investigation was started on November 5, 2018. (Doc. 46 – 1 at 2 (this version is the document submitted by Clary. Defendants also submitted the same document elsewhere, but this one includes Clary's occasional handwritten commentary about the document, which the Court interprets as a sort of disputed fact).)

On December 20, 2018, Clary filed a new informal grievance, alleging a sexual assault by Kraus on December 13, 2018 and saying PREA protocol had not been followed. (Doc. 38-27 at 92.) Staff responded that the information would be forwarded to the PREA investigator.

On December 23, 2018, Clary filed a third informal grievance regarding his PREA complaints and Klaus, this time also mentioning Zacher. He requested investigation of the second assault. In this grievance, he complained about the delay in providing him PREA information, suggesting that Kraus was not being properly separated from him. (This interpretation is very implicit; the text of the grievance is less than clear.) (Doc. 38-27 at 93.)

On January 2, 2019, Clary submitted an informal grievance against Zacher, stating that Zacher failed to report his initial claim of sexual harassment (presumably the "see your nuts" comment) to his supervisors, and that Zacher subsequently improperly discussed Clary's PREA investigation with Defendant Terri Hossack. Clary asserted that he learned this last fact by reading Zacher's lips. (Doc. 38-27 at 94.) Clary then demanded enforcement of the PREA separation order from both Zacher and Kraus. Staff responded that Zacher will be assigned elsewhere. (It is not clear from the record that the separation order was required by PREA policy for Zacher, since he had not been accused of any sexual impropriety, but was granted as a response to Clary's request in his grievance.)

Clary then submitted an informal grievance on May 27, 2019 requesting that PREA investigator Defendant Bill Weddington recuse himself from the investigation. Clary stated that Weddington failed to serve the separation notice

properly, allowing Kraus to "sexual assault" Clary on December 13, 2018.[3] Clary's "Action requested" on this grievance, though he had previously stated he wanted Weddington recused, was "investigate for litigation." The staff response was that Weddington would not recuse himself. (Doc. 38-27 at 102.)

Clary's June 26, 2019 informal grievance alleged that he woke up to see Kraus staring menacingly at him, and he requested that Kraus be kept away, claiming that the MSP PREA compliance officer was exhibiting "nihilistic job performance." Staff responded that Kraus was in Clary's unit incidentally and not improperly assigned there. (Doc. 38-27 at 103.) Clary informally grieved Kraus's presence on his unit again on August 27 and September 4, 2019. (Doc. 38-27 at 104 - 105.)

This latter informal grievance is the first of Clary's PREA-related grievances that he advanced to the formal grievance level. (Doc. 38-27 at 106.) The formal grievance requested that Kraus be kept away from him. The response was "not processed" because the action requested was "not appropriate." Clary did not appeal the denial of this grievance further.

---

[3] This is not the first time that Clary has stated the assault occurred on the 13th and not the 12th, as well as occasionally saying the first incident happened on November 31 and not October 31. The dates in the record are clear, despite these occasional errors.

(In contrast to all of these informal grievances that were not advanced, Defendants' Statement of Undisputed Facts outlines all of the grievances and appeals related to the loss of his orthopedic shoes, the appeal of which he exhausted to the DOC level. (Docs. 38 at 25 and 38-8 at 15.))

C. Exhaustion analysis

Determining whether Clary exhausted his remedies requires, in part, determining exactly what his claims are; if his claims were not grievable, then he had no obligation to attempt to grieve them. In assessing and liberally construing Clary's complaint, the Court originally considered his allegation of sexual assault as potentially giving rise to an Eighth Amendment claim. Now that the record is fuller, it is clear that the events of October 31, 2018 (including the conduct of Zacher, the comments by Kraus and the strip search), the supposed violent pat-down of Dec. 12, 2018, and the PREA separation needs order violations of August 27, and September 4, 9, and 11, 2019 form the basis of his claims. (Docs. 1 at 5 – 6 and 31-2.) Clary alleges vicarious liability against most defendants. *Id*.

All of the Defendants named by Clary in his Complaint, except for Kraus himself, are named in relation to concealing PREA violations, not enforcing separation orders, not maintaining privacy around PREA investigations, failing to report PREA violations, and otherwise not following various PREA protocols. (Doc. 1 at 6 – 9.) The only attachments to Clary's complaint are documents related

to the separation needs order. However, the grievances filed by Clary either failed to mention these specific defendants at all related to his sexual assault complaints (Michael, Guyer, Butler, Griner, Keele, or Hossack) or never pursued the grievances after the formal level (Weddington, Zacher and Kraus.) (Doc. 37 at 12.) If he never grieved the staff conduct, he cannot file suit based on their conduct. Michael, Guyer, Butler, Griner, Keele and Hossack should be dismissed for failure to exhaust—more accurately, failure even to begin.

Clary's responses to Defendants' assertions regarding exhaustion are that "[o]nce a bureau chief grants plaintiff[is] action requested on the informal resolution form, plaintiff is barred from any further administrative review[,]" and that PREA investigations are not grievable, nor are separation needs orders. (Docs. 49 at 2 and 46 at 2.) Clary appears to assert that once he grieved the original harassment and assault, as he characterized them, and a PREA investigation was launched, he could not grieve those incidents further.

Under this reasoning, there is no question that Clary was obliged to grieve anything other than the actual alleged harassment and assault that were the basis of the PREA investigation. He appeared to recognize that by grieving his lost shoes and the PREA separation order issues repeatedly, though not through the entire process. All of his other claims against defendants for which he did not exhaust his administrative remedies should be dismissed for that failure—the claims against all

14

of the named defendants whose actions he did not grieve, and the claims against Weddington, Kraus and Zacher whose actions he did grieve but failed to exhaust.

For example, Clary's claims about the failure of the prison administration to enforce the separation needs order properly is exactly the kind of staff conduct claim that would benefit from exhaustion. It seems likely that higher authorities within the prison and the DOC would have greater leverage to insist that such orders be more assiduously followed. However, we will never know, since Clary did not sufficiently pursue these claims, never progressing further than a formal grievance on one of his informal grievances. Therefore, all claims against all defendants other than the alleged strip search incident and pat-down assault should be dismissed.

The more difficult question, however, is what were Clary's exhaustion obligations regarding these specific underlying incidents of his PREA claim? The investigation was not complete until December 5, 2019, after Clary had filed his Complaint. (Doc. 38 – 19.) The conclusion of the PREA investigation was that the initial complaint regarding the strip search and potential sexual harassment was unsubstantiated. (Doc. 38 – 19 at 9.) Clary's second claim, of a sexual assault on his testicles, was determined to be unfounded, and the investigator recommended that Clary be referred to disciplinary action for lying or providing a false statement about the incident. (Doc. 38 – 19 at 9 - 10.)

There are two possibilities. If Clary is right that he could not further grieve the harassment or assault because he had instigated the PREA investigation, then it also makes sense that he could not file a claim until that investigation was completed, or until he had grieved a failure to complete, if that was what occurred. If the PREA investigation was its own administrative process, it too had to be exhausted. If Clary was correct that he could not grieve the assault while the PREA investigation was pending, that does not, without more, mean that Clary was at liberty to immediately file suit. In fact, in means the opposite, that he had to wait for that process to finish before filing.

The other possibility is that he could file grievances related to the conduct while the investigation was pending. The facts here are similar to *Ross v. Blake*, 136 S.Ct. 1850 (2016). In *Ross*, the prisoner plaintiff had initiated the internal investigation of a correctional officer and then went ahead and sued before the investigation was complete. Ross, like Clary, asserted that he did not exhaust the grievance procedure because starting the investigation was sufficient. *Ross*, 136 S.Ct., at 1855. The Supreme Court reiterated that the PLRA's exhaustion requirement is mandatory. A court cannot determine "special circumstances" precluded exhaustion. *Ross*, 136 S.Ct., at 1856. It can, however, analyze whether an administrative remedy is truly "available." In line with *Ross*, an ongoing investigation does not preclude the requirement to exhaust.

With the Defendants having established that Clary had an administrative remedy available and failed to exhaust it, the burden shifts to Clary to show that one of the exceptions to the exhaustion requirement applies to him. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). "Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858.

There was clearly an administrative process available to Clary, one that he had taken advantage of dozens of times. There is nothing "opaque" about the procedure, to use *Ross v. Blake*'s term, that Clary hadn't been able to see through before. The administrative procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate as to their meaning. *Ross*, 136 S.Ct., at 1859. "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id*. If Clary was not sure whether he could continue to grieve aspects of the sexual assault, he should have exhausted the procedure to err on the side of caution.

Nor could Clary credibly claim the process was a dead end, as he had had various grievances granted in the past. (Doc. 38-27 at 15, 42, 49, 50, 51, 57, 64, 73, 74, 78, 84, 87, 89, 91, 94, 97, 103, 104, 107.) He could conceivably think that his

grievances regarding the supposed assault would go nowhere, but he was obliged to try. And if the response to the grievance was a denial, based on the investigation, that only established further that the administrative process available to him—the investigation--was ongoing, and he was not entitled to file suit until it was completed.

Finally, Clary has not established, or even alleged, that prison administrators somehow thwarted him from taking advantage of the grievance process through "machination, misrepresentation, or intimidation." *Id*. at 1860. Therefore, the Court concludes that Clary had administrative procedures available to him and failed to exhaust them, precluding his right to file this litigation.

IV.    Conclusion

The PREA investigation may have taken too long, and there were clearly issues along the way with exposing Clary to staff members involved in the incidents under scrutiny. However, all of that was grievable as staff conduct under MSP OP 3.3.3—any unwarranted delay, any improper contact, etc. Proper exhaustion of Clary's claims may very well have obviated his need to go to the trouble and expense of filing this lawsuit, especially given the ultimate conclusion of the investigation. There are no disputed material facts that would create an issue for trial; summary judgment for Defendants on both motions is appropriate.

For the foregoing reasons, this Court enters the following recommendations:

18

1. Defendants Michael, Guyer, Butler, Griner, Keele, Hossack, Zacher and Weddington's Motion for Summary Judgment (Doc. 36) should be GRANTED;

2. Defendant Kraus' Motion for Summary Judgment (Doc. 40) should be GRANTED; and

3. The clerk of court should enter judgment by separate document.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1).[4]  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 9th day of March, 2021.

John Johnston
United States Magistrate Judge

---

[4]  This deadline allows a party to act within 14 days after the Findings and Recommendation is "served."  Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.